1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  MICHAEL PHILLIP WOODS,                    Case No.:  22-cv-1055-MMA (AGS)
    CDCR #BG-8263,
12                                            **ORDER GRANTING MOTION TO**
                              Plaintiff,      **PROCEED IN FORMA PAUPERIS;**
13
                                              [Doc. No. 5]
14          vs.

15                                            **DENYING MOTION TO APPOINT**
    HEALTH CARE SPECIALTY                     **COUNSEL; AND**
16  SERVICES and CENTINELA STATE
    PRISON,                                   [Doc. No. 7]
17
                              Defendants.     **DISMISSING COMPLAINT WITH**
18                                            **LEAVE TO AMEND PURSUANT TO**
                                              **28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)**
19
20
21

22        Plaintiff Michael Phillip Woods, a state prisoner incarcerated at Centinela State

23  Prison in San Diego, California, is proceeding *pro se* with a civil rights Complaint

24  pursuant to 42 U.S.C. § 1983.  Doc. No. 4.  Plaintiff claims his rights to medical care and

25  to be free from cruel and unusual punishment were violated when he received inadequate

26  medical treatment for a broken wrist.  *Id.* at 3–4.

27        Plaintiff has not paid the civil filing fee required by 28 U.S.C. § 1914(a) and has

28  instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C.

§ 1915(a), along with a separately-filed copy of his inmate trust account statement.  Doc. Nos. 5–6.  He has also filed a Motion to Appoint Counsel.  Doc. No. 7.

# I. MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a failure to prepay the entire fee only if leave to proceed IFP is granted pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).  Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint."  28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets.  *See* 28 U.S.C.  1915(b)(1) & (4).  The institution collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid.  *See* 28 U.S.C. § 1915(b)(2).  Plaintiff remains obligated to pay the entire fee in monthly installments regardless of whether their action is ultimately dismissed.  *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); 28 U.S.C. § 1915(b)(1) & (2).

Plaintiff's prison certificate shows he had an average monthly balance of $188.86 and average monthly deposits of $106.42 for the 6-months preceding the filing of this action, and an available balance of $104.00.  *See* Doc. No. 6 at 1.  The Court therefore

---

[1] In addition to a $350 fee, civil litigants, other than those granted leave to proceed IFP, must pay an additional administrative fee of $52.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).

**GRANTS** Plaintiff's Motion to Proceed IFP and assesses an initial partial filing fee of $23.77. Plaintiff remains obligated to pay the remaining $326.23 in monthly installments.

## II. SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A.    Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed

me accusation[s]" fall short of meeting this plausibility standard. *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks omitted).

**B.   Allegations in the Complaint**

In count one of the Complaint Plaintiff alleges that on or around December 6, 2019, he fractured his right wrist and "requested to be seen and treated by 'D-Yard Medical.'" Doc. No. 4 at 3. Plaintiff was diagnosed with "right wrist tendonitis" and provided a treatment plan of "home therapy, including moist heat, massage, [and] range of motion stretching exercises," and received a prescription for 600 mg Ibuprofen for 60 days. *Id*. However, after several days the pain and swelling worsened under the treatment plan and he requested to be seen again. *Id*. "I was told by the physician of D-Yard Medical that the swelling will go down, it was just inflamed." *Id*.

On January 15, 2020, Plaintiff was "transported to San Diego to see Dr. Forester," who "informed me that I have a right wrist lunate fracture and that it needed to be put into a cast." *Id*. Plaintiff claims: "'D-Yard Medical' did not take the proper procedure or protocol before giving me a diagnosis of 'right wrist tendonitis' which caused me to endure unnecessary pain and discomfort." *Id*.

Plaintiff alleges in count two that on or around July 1, 2021, he "started having problems with my right hand going numb causing me pain and discomfort. I requested multiple visits to 'D-Yard Medical' for diagnosis and treatment, with negative results." *Id*. at 4. He states he is still suffering pain and discomfort and that "the pain got so bad that [I] could barely hold a pen to write, brush my teeth, or complete tasks with my right hand" and the pain "even wakes me up during sleeping." *Id*. Plaintiff submitted a Healthcare Grievance form 602 "against Specialty Service" in order to obtain proper

medical care, which was denied "with 'no intervention.'"  *Id.*

Plaintiff names as Defendants "Health Care Specialty Services" and "Centinela State Prison."  *Id.* at 2.  He seeks compensatory and punitive damages.  *Id.* at 7.

**C.    Analysis**

Prisoner medical care may amount to cruel and unusual punishment in violation of the Eighth Amendment when medical professionals are "deliberately indifferent" to an inmate's "serious" medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'"  *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)).

"[A] prison official violates the Eighth Amendment when two requirements are met.  First, the deprivation alleged must be, objectively, 'sufficiently serious.'"  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety."  *Id.* (quoting *Wilson*, 501 U.S. at 302–03).  "A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference."  *Colwell*, 763 F.3d at 1068.  Negligence or malpractice in diagnosing or treating a medical condition does not violate the Eighth Amendment.  *Farmer*, 511 U.S. at 835; *Estelle*, 429 U.S. at 106.  A prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

With respect to the serious medical need prong of an Eighth Amendment claim, the allegations in the Complaint that the lack of adequate medical care has resulted in Plaintiff experiencing ongoing pain and discomfort as well as difficulty sleeping, holding

a pen and brushing his teeth, are sufficient to survive the "low threshold" of screening required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain.").

However, the Complaint fails to plausibly allege Defendants were deliberately indifferent to that serious medical need for two reasons.  First, Plaintiff has not identified a proper Defendant, as he names only Centinela State Prison and Health Care Specialty Services as Defendants.  "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law."  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).  Centinela State Prison is not a "person" within the meaning of § 1983.  *See Allsion v. Cal. Adult Auth.*, 419 F.2d 822, 822-23 (9th Cir. 1969) (concluding that state prison was not a "person" for purposes of § 1983).  Plaintiff does not identify in any way the only other Defendant named in the Complaint, "Health Care Specialty Services," but merely contends it was acting under color of state law because it was under direction of the CDCR.  Doc. No. 4 at 2.  To the extent this Defendant is Centinela's medical department, it too is not a "person" within the meaning of § 1983.  *See Walker v. Scott*, 10cv5629-VAP (PJW), 2014 WL 346539, at *5 (C.D. Cal. Jan. 23, 2014) ("Defendant Prison Administrative Health Care is not a person and, therefore, is not amenable to suit under 42 U.S.C. § 1983.") (citing *Flint v. Dennison*, 488 F.3d 816, 824 (9th Cir. 2007) (noting that governmental entities are considered arms of the state and not "persons" withing the meaning of 42 U.S.C. § 1983)).

Second, even if Plaintiff could identify a proper Defendant, he has not alleged deliberate indifference.  The deliberate indifference prong of an Eighth Amendment

violation "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). In count one of the Complaint Plaintiff alleges his fractured wrist was misdiagnosed as tendonitis on December 6, 2019, by "D-Yard Medical" at Centinela State Prison, that it was not properly diagnosed as a broken wrist until January 15, 2020, by Dr. Forester at a different location, and that he suffered unnecessary pain and discomfort during that six-week period as a result of the incorrect diagnosis. Doc. No. 4 at 3.

A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. In other words, the Eighth Amendment is violated when a prison official, acting with deliberate indifference, exposed Plaintiff to a sufficiently "substantial risk of serious harm" to his health. *Id.* at 843. Count one includes at best only an allegation of a misdiagnosis of Plaintiff's wrist which does not rise to the level of an Eighth Amendment violation. *See Farmer*, 511 U.S. at 835 ("[N]egligen(ce) in diagnosing or treating a medical condition" does not amount to deliberate indifference) (quoting *Estelle*, 429 U.S. at 106) (holding that inadvertent failure to provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim).

There are no facts alleged in the Complaint which plausibly allege a prison official was actually aware that a substantial risk to Plaintiff existed as a result of his wrist needing different treatment and deliberately disregarded that risk. Plaintiff alleges he complained of swelling and pain a few days after his December 6, 2019, diagnosis of tendonitis, and was sent to an outside doctor for examination on January 15, 2020, but the Complaint contains no allegations that Plaintiff made any Defendant aware during that six-week period that he needed further treatment or diagnosis, or why he was eventually

sent to an outside doctor.  "A defendant must purposely ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."  *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).  Although "[p]rison officials are deliberately indifferent to a prisoner's serious medical needs with they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002), with respect to the six-week delay in properly diagnosing Plaintiff's wrist injury during which he alleges he suffered unnecessary pain, he can only establish deliberate indifference from such a delay where there is a purposeful act or failure to act by the prison official that results in harm to the plaintiff.  *Jett*, 439 F.3d at 1096; *Castro v. County of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016) ("A prison official cannot be found liable under the Cruel and Unusual Punishment Clause [of the Eighth Amendment] . . . 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'") (quoting *Farmer*, 511 U.S. at 837).  Without factual allegations that a Defendant was aware during that six-week delay that Plaintiff was seeking medical attention and aware of facts from which an inference could be drawn that he needed medical attention, and actually drew that inference but deliberately disregarded Plaintiff's need for medical attention, count one does not state an Eighth Amendment claim.

The Complaint alleges in count two that on or about July 1, 2021, about one- and one-half years after surgery, Plaintiff began experiencing numbness, pain and discomfort, and he "requested multiple visits to 'D-Yard Medical' for diagnosis and treatment, with negative results."  Doc. No. 4 at 4.  He states that his inmate healthcare 602 grievance was denied marked "no intervention."  *Id*.  These allegations are not entirely clear whether Plaintiff's requests to be seen were refused by the medical department or if his visits there resulted in a determination that no further treatment of his condition was

medically necessary.  Either way, deliberate indifference can be shown where the chosen course of medical treatment was "medically unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to the prisoner's health."  *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).  A prison official can be found liable for an Eighth Amendment violation where, knowing of a substantial risk to Plaintiff's health in declining to provide such treatment, deliberately disregarded that risk when choosing the course of treatment which caused substantial harm.  *See Wood v. Housewright*, 900 F.2d 1332, 1334–35 (9th Cir. 1990) (a defendant must purposefully ignore or fail to respond to pain or medical needs and the delay must have "caused substantial harm").  Even assuming the allegations in count two that Plaintiff's medical condition of numbness and pain in his wrist making it difficult to sleep and engage in daily activities plausibly allege that an inference could be drawn that a substantial risk of serious harm existed without further or different treatment, count two fails to identify a prison official who was aware, either through his requests for visits to D-Yard Medical or his 602 healthcare grievance, of those facts, and who then drew that inference but failed to act.  *Farmer*, 511 U.S. at 837.

If Plaintiff wishes to proceed with a claim that he experienced six weeks of unnecessary pain and discomfort as a result of a broken wrist being misdiagnosed as tendonitis, or a claim based on the denial of follow-up medical treatment after complaints of pain, numbness and inability to use his hand for daily activities, he must set forth facts which plausibly allege a Defendant knew of and purposefully ignored or failed to respond to his pain or medical needs, and that the delays caused him substantial harm.  *See Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence" and "more than ordinary lack of due care for the prisoner's interests or safety."); *Castro*, 833 F.3d at 1068 ("A prison official cannot be found liable under the Cruel and Unusual Punishment Clause [of the Eighth Amendment] . . . 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference.'") (quoting *Farmer*, 511 U.S. at 837).

Accordingly, Plaintiff's Complaint is dismissed *sua sponte* for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

**D.    Leave to Amend**

In light of Plaintiff's *pro se* status, the Court grants him leave to amend his pleading to attempt to sufficiently allege a § 1983 claim if he can and if he wishes to attempt to do so. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

**E.    Motion to Appoint Counsel**

Plaintiff requests appointment of counsel because he is unable to afford counsel, his imprisonment limits his ability to research and investigate, he has limited access to the prison law library and limited legal knowledge, and because this case will likely involve the type of conflicting testimony only counsel can competently handle. Doc. No. 7 at 1–2. All documents filed pro se are liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle*, 429 U.S. at 106). There is no constitutional right to counsel in a civil case, and the decision to appoint counsel under 28 U.S.C. § 1915(e)(1) is within "the sound discretion of the trial court and is granted only in exception circumstances." *Agyeman v. Corr. Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (noting that only "exceptional circumstances" support such a discretionary appointment). Exceptional circumstances exist where there is cumulative showing of both a likelihood of success on the merits and an inability of the *pro se*

litigant to articulate his claims in light of their legal complexity. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).

Plaintiff's Complaint demonstrates he is capable of legibly articulating the facts and circumstances relevant to his claims, and he has yet to show he is likely to succeed on the merits. The Court therefore **DENIES** the motion for appointment of counsel without prejudice.

### III. Conclusion

Good cause appearing, the Court **GRANTS** Plaintiff's Motion to Proceed IFP and **ORDERS** the Secretary of the CDCR, or her designee, to collect from Plaintiff's prison trust account the initial filing fee of $23.77 and thereafter collect the remaining $326.23 filing fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). The Court **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

Further, the Court **DENIES** Plaintiff's Motion to Appoint Counsel and **DISMISSES** all claims against all Defendants in the Complaint without prejudice and with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order with respect to any or all other Defendants. Plaintiff's First Amended Complaint must be complete by itself without reference to his original Complaint. Defendants not named and any claims not re-alleged in the First Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be

"considered waived if not repled").  If Plaintiff fails to amend, the Court will dismiss this action for failure to state a claim and failure to prosecute.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated:  September 29, 2022

HON. MICHAEL M. ANELLO
United States District Judge