UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PHILLIP WOODS, CDCR #BG-8263,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTH CARE SPECIALTY SERVICES, et al.,<br><br>Defendants. | Case No.: 22-cv-1055-MMA (AGS)<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)** |

On July 18, 2022, Plaintiff Michael Phillip Woods, a state prisoner incarcerated at Centinela State Prison in San Diego, California, proceeding *pro se*, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. Doc. No. 4. Plaintiff claimed he received inadequate medical care for a broken wrist. *Id.* at 3–4.

On September 9, 2022, the Court granted Plaintiff leave to proceed *in forma pauperis* ("IFP") and screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b), under which the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. Doc. No. 8. The Court dismissed the Complaint with leave to amend because it failed to identify a proper Defendant, as it named only

Centinela State Prison and Health Care Specialty Services as Defendants, and because it did not plausibly allege that any prison official was aware of and deliberately disregarded a substantial risk to Plaintiff's health, or that the treatment he received was medically unacceptable under the circumstances and chosen in conscious disregard of an excessive risk to his health. *Id*. at 5–10.

Plaintiff has now filed a First Amended Complaint ("FAC"). Doc. No. 9. He names 35 individual Centinela health care workers as Defendants, including eight Doctors, twenty-five Nurses and two Occupational Therapists. *Id*. at 3. Despite being instructed in the Court's prior dismissal Order that individual Defendants whose acts or omissions are alleged to have caused a constitutional violation must be identified in the FAC, the FAC contains the same brief factual allegations as the original Complaint which fail to name any of the individual Defendants and lacks any indication of what any individual Defendant did or failed to do. Rather, Plaintiff attaches as exhibits to the FAC copies of his medical records, prison grievances and personal medical journal, which include references to six of the 35 individual Defendants. Doc. No. 9-1; Doc. No. 9-2.

## I. SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A.   Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of

Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks omitted).

**B.   Allegations in the FAC**

In count one of the FAC Plaintiff alleges that on or around December 6, 2019, he fractured his right wrist and "requested to be seen and treated by 'D-Yard Medical.'" Doc. No. 9 at 4. He was seen and diagnosed with "right wrist tendonitis" and provided a treatment plan of "home therapy, including moist heat, massage, [and] range of motion stretching exercises," and received a prescription for 600 mg Ibuprofen for 60 days. *Id*. However, after several days the pain and swelling worsened under the treatment plan and he requested to be seen again. *Id*. "I was told by the physician of D-Yard Medical that the swelling will go down, it was just inflamed." *Id*.

On January 15, 2020, Plaintiff was "transported to San Diego to see Dr. Forester," who is not a Defendant, and who told Plaintiff: "I have a right wrist lunate fracture and that it needed to be put into a cast." *Id*. Plaintiff claims: "'D-Yard Medical' did not take the proper procedure or protocol before giving me a diagnosis of 'right wrist tendonitis' which caused me to endure unnecessary pain and discomfort. See Exhibit A." *Id*. As detailed below, Exhibit A consists of copies of Plaintiff's medical records and inmate grievances regarding the incorrect diagnosis of wrist tendonitis. Doc. No. 9-1 at 1–13.

Plaintiff alleges in count two that on or around July 1, 2021, he "started having problems with my right hand going numb causing me pain and discomfort. I requested multiple visits to 'D-Yard Medical' for diagnosis and treatment, with negative results." Doc. No. 9 at 5. He states he is still suffering pain and discomfort and that "the pain got so bad that [I] could barely hold a pen to write, brush my teeth, or complete tasks with my right hand" and the pain "even wakes me up during sleeping." *Id*. Plaintiff submitted a Healthcare Grievance form 602 against "Defendant Health Care Specialty Services" in order to obtain proper medical care, which was denied "with 'no intervention.'" *Id*. He states that he is "still enduring ongoing pain and discomfort from the lack of medical care being given to me. See Exhibits B-E." *Id*. As detailed below, Exhibits B-E consist of medical records, grievances, and Plaintiff's "Personal Medical Journal of Medical Events." Doc. No. 9-1 at 14–31; Doc. No. 9-2 at 1–12.

The FAC renames: "Health Care Specialty Services" and "Centinela State Prison" as Defendants, and names as new Defendants Doctors Kyle Seeley, Samuel Ko, Chirag Bhavsar, Ajmel Sangha, Dorothy Do-Williams, Rogelio Ortega, Sabeen Munib and Harpreet Gill, Licensed Vocational Nurses Julio Coronado, Noel Luna, Maria Ramirez, Christina Lancaster, Denise Vega, Charisma Johnson, Chrissy Camon, Cynthia Valdez, Carmen Gomez, Cruz Garcia, Collette Harris and Michael Blade, Registered Nurses George Estrada, Raul Beltran, Emil Duran, Alejandro Pineda, Theresia Torczon, Alex Murillo, Ana Martinez, Janelle Sandoval, Preciado Gullermo, Alma Galvan, Rosemarie Doherty, Monica Raggosa and Ricardo Rosas, and Occupational Therapists Erica Felix

and Michael Blade. *Id*. at 2. The FAC contains no allegations against any of these individual Defendants. Rather it appears Plaintiff intends to rely on the exhibits attached to the FAC to identify the individual Defendants' involvement in his medical care, but which include references to only six of the 35 individual Defendants. Doc. No. 9-1; Doc. No. 9-2. He seeks compensatory and punitive damages. Doc. No. 9 at 8.

## C. Analysis

Prisoner medical care may amount to cruel and unusual punishment in violation of the Eighth Amendment when medical professionals are "deliberately indifferent" to an inmate's "serious" medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)).

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, Plaintiff must allege the prison official he seeks to hold liable had a "sufficiently culpable state of mind," that is, "one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 302–03). "A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference." *Colwell*, 763 F.3d at 1068. Negligence or malpractice in diagnosing or treating a medical condition does not violate the Eighth Amendment. *Farmer*, 511 U.S. at 835; *Estelle*, 429 U.S. at 106. A prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

With respect to the serious medical need prong of an Eighth Amendment claim, the

allegations in the FAC that the lack of adequate medical care has resulted in Plaintiff experiencing ongoing pain and discomfort, as well as difficulty sleeping, holding a pen and brushing his teeth, are sufficient to survive the "low threshold" of screening required by 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994) ("[I]ndicia of a 'serious' medical need include (1) the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, (2) the presence of a medical condition that significantly affects an individual's daily activities, and (3) the existence of chronic or substantial pain.").

However, the FAC fails to plausibly allege any Defendants was deliberately indifferent to Plaintiff's serious medical needs.  As Plaintiff was informed in the Court's prior order of dismissal of his original Complaint, Centinela State Prison and Health Care Specialty Services are not proper Defendants.  "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law."  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).  Centinela State Prison and Health Care Specialty Services are not "persons" within the meaning of § 1983.  *See Allsion v. Cal. Adult Auth.*, 419 F.2d 822, 822-23 (9th Cir. 1969) (concluding that state prison was not a "person" for purposes of § 1983); *Walker v. Scott*, 10cv5629-VAP (PJW), 2014 WL 346539, at *5 (C.D. Cal. Jan. 23, 2014) ("Defendant Prison Administrative Health Care is not a person and, therefore, is not amenable to suit under 42 U.S.C. § 1983.") (citing *Flint v. Dennison*, 488 F.3d 816, 824 (9th Cir. 2007) (noting that governmental entities are considered arms of the state and not "persons" withing the meaning of 42 U.S.C. § 1983)).

With respect to the remaining Defendants, 35 Doctors, Nurses, and Occupational Therapists working at Centinela, Plaintiff has not alleged deliberate indifference.  The deliberate indifference prong of an Eighth Amendment violation "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and

(b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  In count one of the FAC Plaintiff alleges his fractured wrist was misdiagnosed as tendonitis on December 6, 2019, by "D-Yard Medical" at Centinela State Prison, that it was not properly diagnosed as a broken wrist until January 15, 2020, by Dr. Forester, an outside doctor who is not a Defendant, and that he suffered unnecessary pain and discomfort during that six-week period as a result of the incorrect diagnosis.  Doc. No. 9 at 4.

A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  In other words, the Eighth Amendment is violated when a prison official, acting with deliberate indifference, exposed Plaintiff to a sufficiently "substantial risk of serious harm" to his health. *Id*. at 843.  Count one contains an allegation of a misdiagnosis of Plaintiff's wrist injury which does not rise to the level of an Eighth Amendment violation.  *See Farmer*, 511 U.S. at 835 ("[N]egligen(ce) in diagnosing or treating a medical condition" does not amount to deliberate indifference) (quoting *Estelle*, 429 U.S. at 106) (holding that inadvertent failure to provide medical care, mere negligence or medical malpractice and differences of opinion over what medical treatment is proper, do not state an Eighth Amendment claim).

Plaintiff alleges he complained of swelling and pain a few days after his December 6, 2019, diagnosis of tendonitis, and was sent to an outside doctor for examination on January 15, 2020, but the FAC contains no allegations that any Defendant was aware during that six-week period he needed further treatment or diagnosis, as opposed to at most malpractice or negligence in failing to adequately diagnose his condition.  "A defendant must purposely ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX Technologies,*

*Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).  Although "[p]rison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002), with respect to the six-week delay in properly diagnosing Plaintiff's wrist injury during which he alleges he suffered unnecessary pain, he can only establish deliberate indifference from such a delay where there is a purposeful act or failure to act by the prison official that results in harm to the plaintiff.  *Jett*, 439 F.3d at 1096; *Castro v. County of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016) ("A prison official cannot be found liable under the Cruel and Unusual Punishment Clause [of the Eighth Amendment] . . . 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"), quoting *Farmer*, 511 U.S. at 837.  Without factual allegations that any Defendant actually drew an inference that Plaintiff needed different medical attention during the six-week delay and deliberately disregarded that need, count one does not state an Eighth Amendment claim.

Plaintiff apparently seeks to satisfy that pleading requirement with respect to claim one through Exhibit A to the FAC, which consists of: (1) medical records indicating that Plaintiff had been administered 600 mg of Ibuprofen by Defendant Nurse Camou on January 8, 2020, by order of Defendant Dr. Seeley, with the prescription continued for 60 days, and that on January 15, 2020, Defendant Dr. Seeley examined Plaintiff "for evaluation of right wrist dysfunction with possible lunate fracture more than a month ago.  Patient was splinted today with recommendation to follow-up in 1 month time to reevaluate the wrist."; (2) an inmate grievance dated March 28, 2020, complaining that Dr. Seeley "did not take the proper procedure or follow protocol" when he misdiagnosed Plaintiff's broken wrist as tendonitis, and which is marked as "assigned to" Defendant Dr. Ko on April 8, 2020; and (3) an Institutional Level Response dated April 28, 2020, to that grievance marked: "No intervention."  Doc. No. 9-1 at 1–13.  Only those three

Defendants, Dr. Seeley, Dr. Ko and LVN Camou are mentioned in those documents. Dr. Ko was assigned to review Plaintiff's complaint about the treatment he received from Dr. Seeley nearly four months after his wrist was properly treated, and LVN Camou administered Ibuprofen on a single occasion as ordered by Dr. Seeley.

With respect to count one, the allegations contained in the body of the FAC and Exhibit A as referenced in count one merely allege a six-week delay between Dr. Seeley's December 6, 2019, misdiagnosis of tendonitis and Plaintiff's January 15, 2020 treatment at an outside hospital for a broken wrist, Dr. Ko's assignment to investigate that delay in treatment four months after it occurred with no allegations regarding why Plaintiff contends Dr. Ko is liable, and the administration of a single dose of Ibuprofen by LVN Camou again without any indication of why Camou is named as a Defendant.  As with the original Complaint, there are once again no factual allegations which plausibly allege any Defendant actually drew an inference that a substantial risk to Plaintiff's health existed and deliberately disregarded that risk.  Rather, the FAC merely alleges a misdiagnosis of his wrist amounting at most to negligence or medical malpractice and only against Defendant Dr. Seeley.  Accordingly, claim one of the FAC, alleging an Eighth Amendment violation arising from having a broken wrist misdiagnosed as tendonitis with a resultant six-week delay in having it properly diagnosed and treated, is dismissed *sua sponte* for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

The FAC alleges in count two that on or about July 1, 2021, about one and one-half years after surgery, Plaintiff began experiencing numbness, pain and discomfort, and he "requested multiple visits to 'D-Yard Medical' for diagnosis and treatment, with negative results."  Doc. No. 9 at 5.  He states that his inmate healthcare 602 grievance was denied marked "no intervention" and that he is "still enduring ongoing pain and discomfort from the lack of medical care being given to me.  See Exhibits B-E." *Id*.

Deliberate indifference can be shown where the chosen course of medical

treatment was "medically unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to the prisoner's health." *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). A prison official can be found liable for an Eighth Amendment violation where, knowing of a substantial risk to Plaintiff's health in declining to provide such treatment, deliberately disregarded that risk when choosing the course of treatment which caused substantial harm. *Wood v. Housewright*, 900 F.2d 1332, 1334–35 (9th Cir. 1990) Count two of the FAC fails to identify a prison official who was aware of a substantial risk to Plaintiff but deliberately disregarded that risk. *Farmer*, 511 U.S. at 837.

Rather than identify in the FAC the individual Defendants who Plaintiff alleges knew of a substantial risk to his health and disregarded the risk when choosing the course of treatment he received, he attaches Exhibits B-E in support of this claim. Exhibit B consists of: (1) Plaintiff's May 5, 2022, inmate grievance complaining that he has been having problems with his right hand going numb for several months and has "seen the LVN, RN, and doctor for it [but] nothing is being done," and that for the last 6-8 months he has "seen the Doctor, Specialist, and physical therapist for my shoulder [but] again nothing his being done."; and (2) a July 11, 2022, Institutional Level Response marked: "No intervention" which contains a detailed timeline of treatments from January 27, 2022, through June 24, 2022, and indicates that Plaintiff's "medical condition will continue to be monitored with care provided as determined medically or clinically indicated by the primary care provider." Doc. No. 9-1 at 15–19. There are no Defendants named in those documents. Exhibit C consists of: (1) Plaintiff's August 11, 2022, inmate grievance complaining that he requested medical treatment from Defendant LVN Coronado for extreme pain and discomfort in his wrist and was told he had two options, "to see Defendant Dr. Ko with whom I am not comfortable seeing or file a medical 602," which forced Plaintiff "to go 'man down' in order to received medical attention or care," and (2) the September 12, 2022, Institutional Level Response to that grievance marked "No intervention" which contains a timeline of his treatment from

August 11-30, 2022. *Id*. at 21–25. Dr. Ko and LVN Coronado are the only Defendants referenced in those documents. Exhibit D consists of Plaintiff's July 23, 2022, inmate grievance complaining of an allergic reaction to the tape used to tape his shoulder and that Defendant RN Estrada advised it be treated with lotion, and the September 25, 2022, Institutional Level Response to that grievance marked: "No intervention" which contains a timeline of treatments from July 14-25, 2022. *Id*. at 27–29. RN Estrada is the only Defendant mentioned in those documents. Finally, Exhibit E consists of Plaintiff's 12-page "Personal Medical Journal of Medical Events" chronicling medical events from May 10, 2022, to August 31, 2022. Doc. No. 6-2 at 1–12. It states, in relevant part, that: (1) Defendant RN Estrada put lotion on Plaintiff's shoulder burn and ignored Plaintiff's report that he was allergic to the paper used to tape his shoulder; (2) Plaintiff received a second-degree burn when Defendant Dr. Ko gave him a steroid injection in his shoulder, and thereafter was no longer comfortable with Dr. Ko and refused to be treated by Dr. Ko; (3) LVN Coronado informed Plaintiff he had to choose between being treated by Dr. Ko or submit a medical grievance which would take a least two months to process which forced Plaintiff "to go man down" to receive treatment from someone other than Dr. Ko; and (4) Defendant Dr. Gil prescribed a nerve medication to help reduce pain pending carpel tunnel surgery. *Id*. Although there are references to unnamed doctors and nurses in Plaintiff's exhibits, of the 35 individuals listed as Defendants in the FAC, *see* Doc. No. 9 at 3, none are referenced anywhere in the body of the FAC, and only Defendants Dr. Seeley, Dr. Ko, Dr. Gil, LVN Coronado, LVN Camou and RN Estrada are named in the exhibits attached to the FAC.[1]

Neither the FAC nor the documents attached thereto set forth facts which plausibly allege any Defendant knew of and purposefully ignored or failed to respond to Plaintiff's pain or medical needs, or that the chosen course of medical treatment was "medically

---

[1] Plaintiff references Dr. Bashard in his medical journal, Doc. No. 9-2 at 2, but it is unclear whether this is the same Defendant listed as Dr. Bhavsar in the FAC, Doc. No. 9 at 2.

unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to the prisoner's health." *Toguchi*, 391 F.3d at 1058. Rather, they chronical the extensive responses and treatments Plaintiff received in response to his requests for medical care, and at most allege that Plaintiff disagrees with the doctors and nurses involved regarding whether the level of treatment he received was adequate, or whether it amounted to malpractice or negligence, and do not plausibly allege an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 ("[D]eliberate indifference describes a state of mind more blameworthy than negligence" and "more than ordinary lack of due care for the prisoner's interests or safety."); *Castro*, 833 F.3d at 1068 ("A prison official cannot be found liable under the [the Eighth Amendment] . . . 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'") (quoting *Farmer*, 511 U.S. at 837).

Accordingly, count two of the FAC, alleging an Eighth Amendment violation arising from the type of medical care Plaintiff received following his complaints of numbness, pain and discomfort beginning on July 1, 2021, is dismissed *sua sponte* for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

If Plaintiff wishes to proceed with this action, he must set forth facts in a Second Amended Complaint which plausibly allege one or more Defendants were aware of a substantial risk of serious injury or harm to his health if he was not provided different care and deliberately disregarded that risk. Plaintiff is cautioned not to simply attach and reference exhibits as a substitute for presenting factual allegations in the body of an amended complaint. *See Thomas v. Donovan*, No. 19cv2181-JAH (RBB), 2020 WL 5106663, at *5 (S.D. Cal. Aug. 28, 2020) ("[A] pro se litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim.'") (quoting *Samtani v. City of Laredo*, 274 F.Supp.3d

695, at *2 (S.D. Texas 2017)); *Stewart v. Nevada*, No. 09cv1063, 2011 WL 588485, at *2 (D. Nev. Feb. 9, 2011) ("The Court will not comb through attached exhibits seeking to determine whether a claim possibly could have been stated where the pleading itself does not state a claim. In short, [Plaintiff] must state a claim, not merely attach exhibits.")

### D.     Leave to Amend

In light of Plaintiff's *pro se* status, the Court grants leave to amend to attempt to sufficiently allege a § 1983 claim if Plaintiff can and if wishes to attempt to do so. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## II. CONCLUSION

Good cause appearing, the Court **DISMISSES** all claims against all Defendants in the FAC without prejudice and with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a Second Amended Complaint which cures the deficiencies of pleading noted in this Order with respect to any or all other Defendants. Plaintiff's Second Amended Complaint must be complete by itself without reference to any prior version of his complaint or attachments thereto. Defendants not named and any claims not re-alleged in the Second Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled") If Plaintiff fails to timely amend, the Court will dismiss this action for failure to state a claim and failure to prosecute. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his

complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: December 5, 2022

HON. MICHAEL M. ANELLO
United States District Judge